IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| JANE DOE, | |
| *Plaintiff*, | Case No.: _____ |
| v. | |
| POWER SOLUTIONS, LLC, <br> 17201 MELFORD BOULEVARD <br> BOWIE, MD 20715 | |
| <u>Serve On</u>: <br> Ronald E. Council, Jr. <br> 17201 Melford Boulevard <br> Bowie, MD 20715 | |
| *Defendant*. | |

## <u>COMPLAINT</u>

Plaintiff, Jane Doe, by and through her undersigned counsel, files this lawsuit against Defendant, Power Solutions, LLC, and moves this Court for judgment against it, on the grounds and in the amount set forth below.

### <u>Nature of the Action</u>

1. This action arises out of the sexual harassment and sexual assault of Plaintiff, a female electrician working for Defendant Power Solutions.

2. It states claims against Power Solutions for gender discrimination, as well as retaliation, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and specifically the creation and maintenance of a sexually hostile, discriminatory, and retaliatory working environment.

3. This action also states similar claims pursuant to the Maryland Fair Employment Practices Act, Md. Code, State Gov't § 20-601 *et seq.*

4. Finally, this action states common law claims against Power Solutions for their negligent failure to warn/protect Plaintiff and their negligent retention of the assailant.

Parties

5. Plaintiff is a resident of Prince George's County, Maryland.

6. Defendant is a limited liability company organized in Maryland and doing business in Maryland, Washington D.C., and Virginia. It maintains its principal office in Prince George's County, Maryland.

7. Upon information and belief, at all times during which Plaintiff suffered the sexual harassment, assault, and discriminatory treatment alleged in this complaint, Defendant employed at least fifteen employees and engaged in interstate commerce.

8. Plaintiff was employed by Defendant during the times when she suffered the sexual harassment, assault, and discriminatory treatment alleged in this complaint.

Jurisdiction and Venue

9. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, because the case involves matters of federal law.

10. This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367, as they form part of the same case or controversy stemming from the allegations that form the basis of the federal claims.

11. This Court has personal jurisdiction over Defendant pursuant to 28 U.S.C. § 1391(b)(1), because Defendant is a limited liability company organized under the laws of Maryland, with its principal place of business in Maryland.

12. Venue is proper in this Court pursuant to Title VII's venue provision, 42 U.S.C. § 2000e-5(f)(3), because the relevant employment records are kept in this judicial district; moreover, Defendant has its principal office in this judicial district.

### Procedural Status

13. Plaintiff timely filed a Charge of Discrimination with the United States Equal Opportunity Commission.

14. Over 180 days have passed since she filed her Charge.

15. Plaintiff received a right-to-sue letter dated July 20, 2021 (attached as Exhibit 1).

### Sexual Harassment and Assault of Plaintiff

16. On or about January 16, 2019, Plaintiff began employment as an electrician for Defendant, which is the largest electrical contractor in the greater Washington, D.C. area.

17. During the course of her employment with Defendant, Plaintiff worked the vast majority of her time in Virginia.

18. The electrician field is heavily male-dominated. In the United States, only 2.4% of electricians are women.[1]

19. In November of 2019, Plaintiff was assigned to work at a job site in Herndon, Virginia.

20. Plaintiff's supervisor at the job site was foreman Carlos Alfaro. Alfaro was also an employee of Defendant at all times relevant herein.

21. Alfaro had the authority to direct, supervise, and evaluate Plaintiff's work.

---

[1] *In a Field Dominated by Men, She's in Charge*, THE NEW YORK TIMES (Mar. 5, 2020), https://www.nytimes.com/2020/03/05/business/women-electricians.html#:~:text=In%20the%20United%20States%2C%202.4,entering%20the%20s killed%2Dtrades%20arena.

22. From the outset of their working relationship, Alfaro continuously and egregiously sexually harassed Plaintiff.

23. Examples of Alfaro's harassing and discriminatory behavior toward Plaintiff include (but are not limited to):

 (i) asking her to remove her clothes;

 (ii) asking the color of her underwear;

 (iii) requesting sex;

 (iv) attempting to touch her without her consent;

 (v) making inappropriate comments about her body;

 (vi) making lewd gestures, such as making a circle with the fingers of one hand, and inserting a finger from his other hand into the hole; and

 (vii) drawing pictures depicting Plaintiff naked and showing the pictures to her.

24. Plaintiff reported his harassing behavior to two supervisory employees of the Defendant, both of whom had authority over Alfaro. Despite her complaints, Plaintiff was not transferred, and his behavior towards her continued.

25. Alfaro's disturbing pattern of sexual misconduct culminated in a brutal sexual assault perpetrated against Plaintiff by Alfaro on or about December 6, 2019.

26. On this date, Alfaro came up behind the Plaintiff while she was working on a ladder, held a long metal pipe over his genitals to imitate his penis, and shoved the pipe into Plaintiff's rear-end and between her legs into her groin, ripping her jeans and lacerating her upper leg and vaginal area.

27. Alfaro made crude and sexual remarks as he assaulted Plaintiff, such as asking her "[i]s this how you want it? Or harder? Bigger?"

4

28. As soon as the assault was over, Plaintiff fled the scene, with tears pouring down her face and blood pooling between her legs.

29. That morning, prior to the assault, Plaintiff told Jonathan McPherson, another electrician at the job site with supervisory authority, that she was frightened of Alfaro and wanted to be moved to another floor of the building immediately. She explained to McPherson that she had already tried reporting Alfaro's behavior to two other supervisors. She begged McPherson to help her.

30. Plaintiff's wounds were slow to heal and continued to bleed for days. She sought treatment at the hospital and underwent a SANE exam. She returned to work after the assault and her wounds bled through her jeans. Multiple male employees witnessed this, causing Plaintiff further humiliation.

31. Following the assault, Plaintiff worked for Defendant for a period of approximately 3.5 months. During those months, she suffered additional discriminatory behavior towards her as a result of reporting the harassment and assault by Alfaro. She was singled out and wrongfully accused of tool and/or document violations, wrongfully accused of having COVID-19, sent home for a period of time without pay, and was only permitted to return once she tested negative for the virus. In March 2020, following the coronavirus accusation, Plaintiff wrote a letter to Defendant asking that the management protect her from further discriminatory behavior. That letter is attached as Exhibit 2.

32. Unfortunately, the discrimination did not stop and in April 2020, Plaintiff resigned under duress, as a result of the ongoing discrimination she continued to suffer while working for Defendant. As a result, she was out of work for a period of approximately 2.5 months while she looked for a position with another company, creating a significant financial hardship for her and her family.

33. The sexual assault, harassment, and discrimination of Plaintiff has had a devastating impact on her mental health. She has been diagnosed with PTSD, and continues to suffer from nightmares about the assault and paranoia associated with potential reprisals from her assailant. She suffered a mental breakdown and has experienced suicidal ideations that resulted in a hospitalization. She has undergone psychotherapy and has been placed on psychotropic medications as a result of the harassment and assault by Alfaro.

34. Despite treatment for her physical and psychological injuries, Plaintiff remains deeply traumatized and continues to experience emotional distress and mental anguish over the suffering that she endured at the hands of Defendant and Defendant's employees.

<u>Power Solutions' Failure to Act</u>

35. In the weeks preceding the assault, Plaintiff notified at least three supervisors about Alfaro's sexual harassment and discriminatory behavior and requested help.

36. All of these supervisors were all employees of Defendant.

37. Upon information and belief, each individual notified had supervisory authority over Plaintiff, and two had supervisory authority over Alfaro as well.

38. Plaintiff requested that these supervisors transfer her to another floor on the job site, where she would be away from Alfaro, but her request was never granted.

39. Upon information and belief, none of the notified supervisors took steps to stop Alfaro from continuing his sexual harassment of Plaintiff, or to discipline Alfaro in any fashion for his sexual harassment of Plaintiff prior to the assault.

<u>Additional Discrimination Following the Assault</u>

40. Following the December 6, 2019, assault, Power Solutions terminated Alfaro. Nevertheless, Plaintiff continued to suffer from discriminatory actions by other employees of

Defendant, as a consequence of having reported Alfaro's sexual harassment and the assault.

41. On one occasion following the assault, Plaintiff was falsely accused by another supervisor of not bringing the proper tools and/or documents to work.

42. On March 25, 2020, two other supervisors falsely accused Plaintiff of having COVID-19. She was forced her to leave work and to get tested for COVID-19 before returning. Defendant's supervisors took these actions openly and in front of Plaintiff's coworkers. Accordingly, Plaintiff's coworkers were given the false impression that she had been sick with COVID-19 and had potentially endangered their health.

43. These supervisors were both employed by Defendant.

44. Upon information and belief, both individuals had supervisory authority over Plaintiff.

45. By retaliating against Plaintiff and subjecting her to discriminatory treatment on the basis of her sex and her complaints about harassment, these supervisors directly and proximately caused her to suffer additional mental anguish and emotional distress, exacerbated her already significant trauma, and prolonged her need for psychological and psychiatric treatment.

## Count 1
### Title VII (Gender Discrimination, Sexual Harassment, and Hostile Work Environment)

46. All allegations in the complaint are incorporated into this count by reference.

47. Title VII makes it unlawful for any employer in the United States with at least fifteen employees to discriminate against an employee because of his or her sex.

48. Defendant, acting through its agents and/or employees, unlawfully discriminated against Plaintiff and subjected her to a hostile work environment because of her sex.

49. Plaintiff's supervisor, Carlos Alfaro, engaged in a sustained pattern of discriminatory, hostile, and sexually harassing behavior toward Plaintiff. This conduct was unwelcome and was sufficiently severe and pervasive to create an abusive and hostile work environment for Plaintiff.

50. Alfaro's discrimination against Plaintiff culminated in his sexual assault of her with a metal pipe at work, resulting in severe physical and psychological injuries.

51. Although Plaintiff reported Alfaro's discriminatory behavior to other supervisors on multiple occasions, nothing was done to protect Plaintiff or to stop Alfaro from continuing to harass her.

52. In addition, in the wake of the sexual harassment and assault, various supervisors discriminated against Plaintiff following Alfaro's assault by falsely accusing her of various company violations.

53. Upon information and belief, Alfaro and other various supervisors, aware of Alfaro's sexual harassment and the threat posted as a result, had the power to take tangible employment actions against Plaintiff, and they discriminated against her because of her sex and because of her reporting of the assault by Alfaro.

54. Defendant owed a duty of reasonable care to prevent discrimination, including sexual harassment and sexual assault, against its employees.

55. Defendant breached its duty by failing to exercise reasonable care to prevent the development of a hostile work environment or to eliminate the hostile work environment once it existed. Upon information and belief, with respect to breaching its duty of care,

Defendant acted recklessly and with conscious disregard of a known risk, and/or acted intentionally.

56. Defendant's breach of duty was a direct and proximate cause of the injuries and damages that Plaintiff suffered due to discriminatory treatment and a hostile work environment.

57. In discriminating against Plaintiff by subjecting her to a hostile work environment and by failing to protect her from sexual harassment and assault, Defendant exhibited a malicious, willful, and wanton disregard for Plaintiff's rights under Title VII and under applicable state laws. Defendant is therefore subject to compensatory and punitive damages under this claim.

58. As a direct and proximate result of the hostile work environment and acts of discrimination to which Plaintiff was subjected, she suffered extensive injuries and corresponding damages, including (a) physical and emotional pain and suffering; (b) mental anguish; (c) healthcare expenses for the treatment of her physical and mental injuries; (d) loss of wages; and (e) loss of earning potential.

### Count 2
### Title VII (Retaliation, Constructive Retaliatory Discharge, and Hostile Work Environment)

59. All allegations in the complaint are incorporated into this count by reference.

60. Under Title VII, it is unlawful for an employer to discriminate against an employee because of the employee's opposition to, or reporting of, an unlawful employment practice.

61. Upon information and belief, Defendant discriminated against Plaintiff by subjecting her to maltreatment because of the complaints of sexual harassment and assault that she made against Alfaro.

62. After Alfaro was terminated following his assault on Plaintiff, other supervisors attempted to sabotage Plaintiff by making false accusations against her.

63. Plaintiff was falsely accused by a supervisor of failing to bring proper tools and documentation to work and was falsely accused by additional supervisors of coming to work while sick with COVID-19. In the latter incident, Plaintiff was sent home, and required to obtain a negative COVID test before she was permitted to return to work.

64. Upon information and belief, various supervisors made these false accusations in order to retaliate and discriminate against Plaintiff for her prior opposition to Alfaro's harassment and her reporting of the harassment and the assault.

65. The pattern of discriminatory and hostile behavior toward Plaintiff was sufficiently severe and pervasive to create an abusive and hostile work environment for Plaintiff, particularly as she was in a fragile state coping in the wake of the assault.

66. In discriminating against Plaintiff by retaliating against her because of her opposition to and/or reporting of unlawful employment practices, Defendant exhibited a malicious, willful, and wanton disregard for Plaintiff's rights under Title VII and under applicable state laws. Defendant is therefore subject to compensatory and punitive damages under this claim.

67. As a direct and proximate result of the unlawful retaliation to which Plaintiff was subjected, she suffered extensive injuries and corresponding damages, including (a) physical and emotional pain and suffering; (b) mental anguish; (c) healthcare expenses for the treatment of her physical and mental injuries; (d) loss of wages; and (e) loss of earning potential.

### Count 3
### Maryland Fair Employment Practices Act (Gender Discrimination)

68. All allegations in the complaint are incorporated into this count by reference.

69. The Maryland Fair Employment Practices Act, Md. Code, State Gov't § 20-601 *et seq.*, makes it unlawful for any employer to discriminate against an employee because of his or her sex.

70. Defendant, acting through its agents and/or employees, unlawfully discriminated against Plaintiff and subjected her to a hostile work environment because of her sex.

71. Plaintiff's supervisor, Carlos Alfaro, engaged in a sustained pattern of discriminatory, hostile, and sexually harassing behavior toward Plaintiff. This conduct was unwelcome and was sufficiently severe and pervasive to create an abusive and hostile work environment for Plaintiff.

72. Alfaro's discrimination against Plaintiff culminated in his sexually assaulting her with a metal pipe at work, resulting in severe physical and psychological injuries.

73. Although Plaintiff reported Alfaro's discriminatory behavior to other supervisors on multiple occasions, nothing was done to protect Plaintiff or to stop Alfaro from continuing to harass her.

74. In addition, various supervisors discriminated against Plaintiff following Alfaro's assault by falsely accusing her of various company violations.

75. Defendant owed a duty of reasonable care to prevent discrimination against its employees.

76. Defendant breached its duty by failing to exercise reasonable care to prevent the development of a hostile work environment or to eliminate the hostile work environment once it existed. Upon information and belief, with respect to breaching its duty of care,

Defendant acted recklessly and with conscious disregard of known risk, and/or acted intentionally.

77. Defendant's breach of duty was a direct and proximate cause of the injuries and damages that Plaintiff suffered due to discriminatory treatment and a hostile work environment.

78. In discriminating against Plaintiff by subjecting her to a hostile work environment and by failing to protect her from sexual harassment and assault, Defendant exhibited a malicious, willful, and wanton disregard for Plaintiff's rights under Maryland law. Defendant is therefore subject to compensatory and punitive damages under this claim.

79. As a direct and proximate result of the hostile work environment and acts of discrimination to which Plaintiff was subjected, she suffered extensive injuries and corresponding damages, including (a) physical and emotional pain and suffering; (b) mental anguish; (c) healthcare expenses for the treatment of her physical and mental injuries; (d) loss of wages; and (e) loss of earning potential.

### Count 4
### Maryland Fair Employment Practices Act (Vicarious Liability for Sexual Harassment)

80. All allegations in the complaint are incorporated into this count by reference.

81. Under the Maryland Fair Employment Practices Act, employers are liable for harassment of employees by an individual who directs, supervises, or evaluates the work activities of the employee. The employer is also liable if the negligence of the employer led to the harassment or continuation of harassment.

82. Plaintiff's supervisor, Carlos Alfaro, directed, supervised and evaluated work performed by Plaintiff.

83. Alfaro engaged in a sustained pattern of discriminatory, hostile, and sexually harassing behavior toward Plaintiff. This conduct was unwelcome and was sufficiently severe and pervasive to create an abusive and hostile work environment for Plaintiff.

84. Alfaro's discrimination against Plaintiff culminated in his sexual assault of her with a metal pipe at work, resulting in severe physical and psychological injuries to her.

85. Although Plaintiff reported Alfaro's discriminatory behavior to other supervisors on multiple occasions, nothing was done to protect Plaintiff or to discipline Alfaro.

86. Defendant owed a duty of reasonable care to prevent harassment of its employees.

87. Defendant breached its duty by failing to exercise reasonable care and allowing Alfaro to continue harassing Plaintiff. Upon information and belief, with respect to breaching its duty of care, Defendant acted recklessly and with conscious disregard of known risk, and/or acted intentionally.

88. Defendant's breach of duty was a direct and proximate cause of the injuries and damages that Plaintiff suffered due to the harassment perpetrated by Alfaro.

89. In failing to protect Plaintiff from sexual harassment and assault, Defendant exhibited a malicious, willful, and wanton disregard for Plaintiff's rights under Maryland law. Defendant is therefore subject to compensatory and punitive damages under this claim.

90. As a direct and proximate result of the hostile work environment and acts of discrimination to which Plaintiff was subjected, she suffered extensive injuries and corresponding damages, including (a) physical and emotional pain and suffering; (b) mental anguish; (c) healthcare expenses for the treatment of her physical and mental injuries; (d) loss of wages; and (e) loss of earning potential.

## Count 5
### Maryland Fair Employment Practices Act (Retaliation)

91. All allegations in the complaint are incorporated into this count by reference.

92. Under the Maryland Fair Employment Practices Act, it is unlawful for an employer to discriminate against an employee because of the employee's opposition to, or reporting of, an unlawful employment practice.

93. Upon information and belief, Defendant discriminated against Plaintiff by subjecting her to maltreatment because of the complaints of sexual harassment that she made against Carlos Alfaro.

94. After Defendant Alfaro was terminated following his assault on Plaintiff, other supervisors attempted to sabotage Plaintiff by making false accusations against her.

95. Plaintiff was falsely accused by a supervisor of failing to bring proper tools and documentation to work, and was falsely accused by other supervisors of coming to work while sick with COVID-19. In the latter incident, Plaintiff was sent home and forced to obtain a negative COVID test before she was permitted to return to work.

96. Upon information and belief, these various supervisors made these false accusations in order to retaliate and discriminate against Plaintiff for her prior opposition to Alfaro's harassment and her reporting of the harassment and the assault.

97. The pattern of discriminatory and hostile, behavior toward Plaintiff was sufficiently severe and pervasive to create an abusive and hostile work environment for Plaintiff, particularly as she was in a fragile state coping in the wake of the assault.

98. In discriminating against Plaintiff by retaliating against her because of her opposition to and/or reporting of unlawful employment practices, Defendant exhibited a

malicious, willful, and wanton disregard for Plaintiff's rights under Maryland law. Defendant is therefore subject to compensatory and punitive damages under this claim.

99. As a direct and proximate result of the unlawful retaliation to which Plaintiff was subjected, she suffered extensive injuries and corresponding damages, including (a) physical and emotional pain and suffering; (b) mental anguish; (c) healthcare expenses for the treatment of her physical and mental injuries; (d) loss of wages; and (e) loss of earning potential.

### Count 6
### Negligent Retention

100. All allegations in the complaint are incorporated into this count by reference.

101. Defendant owed Plaintiff a duty of reasonable care to avoid retaining employees who Defendant knew or should have known were unlawfully harassing and discriminating against Plaintiff.

102. Defendant breached its duty of care by continuing to employ Alfaro, despite having actual and/or constructive notice that Alfaro was unlawfully harassing and discriminating against Plaintiff. Defendant could have and should have terminated Alfaro, reassigned him, or otherwise removed him from his position as Plaintiff's supervisor.

103. Upon information and belief, with respect to breaching its duty of care, Defendant acted recklessly and with conscious disregard of known risk, and/or acted intentionally.

104. Defendant's negligent breach of duty was a direct and proximate cause of the injuries and damages that Plaintiff suffered due to Alfaro's misconduct.

105. Defendant knew or should have known that Plaintiff was being harassed by Alfaro, because Plaintiff had reported it to various supervisors who were employees of the

Defendant, and multiple employees on the job have indicated that they knew of Alfaro's harassing behavior towards Plaintiff. Yet, Defendant did nothing to stop the harassment. Defendant exhibited a malicious, willful, and wanton disregard for Plaintiff's common law rights and is therefore subject to compensatory and punitive damages under this claim.

106. As a direct and proximate result of the Defendant's negligence, Plaintiff suffered extensive injuries and corresponding damages, including (a) physical and emotional pain and suffering; (b) mental anguish; (c) healthcare expenses for the treatment of her physical and mental injuries; (d) loss of wages; and (e) loss of earning potential.

## Count 6
### Negligent Failure to Protect/Warn

107. All allegations in the complaint are incorporated into this count by reference.

108. At all relevant times, a special relationship existed between Plaintiff, an employee, and Defendant, her employer.[2]

109. This special relationship established a duty for Defendant to protect or warn Plaintiff against sexually harassing and assaultive behavior at the hands of another person in the workplace.[3]

110. The danger of escalating sexual harassment and assault posed by Alfaro was known and reasonably foreseeable to Defendant.

111. In failing to protect and warn Plaintiff, Defendant breached its duty.

---

[2] *See A.H. v. Rockingham Pub. Co., Inc.*, 255 Va. 216, 220 (1998) (citing Restatement (Second) of Torts § 302B cmt. e (B) (1965)).

[3] *See id.*

112. Upon information and belief, with respect to breaching its duty of care, Defendant acted recklessly and with conscious disregard of known risk, and/or acted intentionally.

113. Defendant exhibited a malicious, willful, and wanton disregard for Plaintiff's common law rights and is therefore subject to compensatory and punitive damages under this claim.

114. As a direct and proximate result of the Defendant's negligence, Plaintiff suffered extensive injuries and corresponding damages, including (a) physical and emotional pain and suffering; (b) mental anguish; (c) healthcare expenses for the treatment of her physical and mental injuries; (d) loss of wages; and (e) loss of earning potential.

<u>Prayer for Relief</u>

WHEREFORE Plaintiff, Jane Doe, demands judgment against Defendant, Power Solutions, LLC, in an amount of $7,000,000, including compensatory and punitive damages, attorney's fees, litigation and court costs and expenses, pre-judgment and post-judgment interest at the legal rate, backpay (including any interest accumulated thereupon), and any other legal and/or equitable relief the Court deems just and proper.

<u>Jury Trial Demand</u>

Plaintiff demands a jury trial on all issues.

Respectfully submitted,

/s/ Kasey K. Murray
KASEY K. MURRAY, ESQ., Bar No. 19091
Koonz McKenney Johnson & DePaolis LLP
2001 Pennsylvania Avenue NW #450
Washington, DC 20006
<u>Phone</u>: (202) 659-5500
<u>Email</u>: kmurray@koonz.com

17

ELIZABETH LAUREN VAN PELT, ESQ.
(to be admitted *pro hac vice*)
Libbey Van Pelt Law, PLLC
3033 Wilson Boulevard, Suite 700
Arlington, VA 22213
Phone: (571) 356-9066
Email: libbey@libbeyvanpeltlaw.com

*Attorneys for Plaintiff*