IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JANE DOE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:21-cv-02300-PX |
| POWER SOLUTIONS, LLC, | * | |
| Defendant. | * | |
| | *** | |

## MEMORANDUM OPINION

Pending before the Court in this employment discrimination and negligence lawsuit is Defendant Power Solutions, LLC's motion to transfer venue. ECF No. 6. The matter is fully briefed, and no hearing is necessary. *See* D. Md. Loc. R. 105.6. For the following reasons, the motion is DENIED.

### I.    BACKGROUND[1]

On January 16, 2019, Plaintiff Jane Doe ("Doe")[2] started working for Defendant Power Solutions, LLC ("Power Solutions" or "Defendant") as an electrician. ECF No. 1 ¶ 16. Doe is a Maryland resident, and Power Solutions is a Maryland corporation with a principal place of business in Prince George's County, Maryland. *See* ECF No. 1 ¶¶ 5, 6; ECF No. 7 ¶ 6. As a female electrician in a heavily male-dominated field, Doe avers that she faced intolerable sexual harassment and sexual assault while employed at Power Solutions. *See* ECF No. 1 ¶¶ 20, 22–23.

In November 2019, Doe was assigned to a job site in Herndon, Virginia. ECF No. 1 ¶ 19. The foreman of the Herndon site, and Doe's direct supervisor, Carlos Alfaro ("Alfaro"), almost immediately embarked on a transparent campaign of sexual harassment aimed at Doe. *See* ECF

---

[1] The facts alleged in the Complaint are taken as true and construed most favorably to Doe.

[2] On November 12, 2021, this Court granted Doe's request to proceed pseudonymously. ECF No. 12.

No. 1 ¶¶ 19, 20, 22. Alfaro asked her to remove her clothes, inquired about the color of her underwear, requested sex, tried to touch her inappropriately, commented on her body, made offensive and sexually explicit gestures, and drew naked pictures of her. *Id.* ¶ 23. Although Doe complained about Alfaro's conduct to two other Power Solutions supervisors, those complaints fell on deaf ears. *Id.* ¶¶ 24, 29.

On December 6, 2019, Doe explained to another supervisor, Jonathan McPherson ("McPherson"), that she was "frightened" of Alfaro. ECF No. 1 ¶ 29. She also recounted how her earlier complaints had gone unaddressed and requested that, at a minimum, she be transferred to another assignment away from Alfaro. *Id.*

Just a few hours later, Alfaro sexually assaulted Doe at the job site. ECF No. 1 ¶ 25. Doe was on a ladder when Alfaro came behind her, wielding a long metal pipe, apparently placed to imitate his penis. *Id.* ¶ 26. He shoved the pipe into Doe's backside so violently that it ripped her jeans and "lacerat[ed] her upper leg and vaginal area." *Id.* During the assault, Alfaro asked Doe whether she liked what he was doing to her. *Id.* ¶ 27. Doe broke free and fled, "with tears pouring down her face and blood pooling between her legs." *Id.* ¶ 28.

Doe sought immediate medical treatment for her injuries. ECF No. 1 ¶ 30. The hospital administered a "SANE exam." *Id.* Although "SANE" is not defined in the Complaint, the Court takes judicial notice that this refers to a Sexual Assault Nurse Examiner—a medical professional who is specially trained to administer care to survivors of sexual assault. *See, e.g.*, *Adult/Adolescent Sexual Assault Nurse Examiner (SANE) Certificate Program*, Kent State University, https://www.kent.edu/nursing/sane (last visited Nov. 12, 2021). Doe's injuries were such that she did not heal quickly, but she still reported to work. Doe continued to bleed through her pants for days. *Id.* ¶ 30.

2

Doe also experienced significant backlash after complaining about Alfaro. ECF No. 1 ¶ 31. Doe was falsely accused of various on-the-job violations and of having COVID-19. *Id.* The false COVID-19 accusation forced Doe to take unpaid leave until she could produce a negative test result. *Id.* In a last-ditch effort to improve her workplace conditions, Doe wrote a letter to Power Solutions, seeking protection against any further discrimination. *Id.* When conditions failed to approve, Doe resigned. *Id.* ¶ 32.

Doe filed this suit on September 8, 2021. She seeks remedies pursuant to Title VII's prohibitions against gender discrimination, sexual harassment, hostile work environment, retaliation, and constructive retaliatory discharge; Title VII's state analogues; and common law negligence. ECF No. 1 ¶¶ 2–4. On October 11, 2021, Defendant moved to transfer venue from the United States District Court for the District of Maryland to the United States District Court for the Eastern District of Virginia (Alexandria Division). ECF No. 6. Doe strenuously opposes the motion.

## II.     STANDARD OF REVIEW

The propriety of venue transfers is governed by 28 U.S.C. § 1404(a), which states, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). To prevail on its motion, a defendant "must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670, 680–81 (D. Md. 2010) (quoting *Helsel v. Tishman Realty & Constr. Co.*, 198 F. Supp. 2d 710, 711 (D. Md. 2002)) (internal quotation marks omitted). Defendant cannot rely on conclusory allegations of

hardship to meet this burden, but rather must produce evidence, by affidavits or otherwise, demonstrating "the hardships they would suffer if the case were heard in the plaintiff's chosen forum." *Dow v. Jones*, 232 F. Supp. 2d 491, 499 (D. Md. 2002).

When deciding the propriety of transfer, the Court must first determine whether the action could have been brought in the requested district. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (4th Cir. 2008). If venue is proper in the requested district, the Court next considers several non-exclusive factors such as "(1) the weight accorded the plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002). Importantly, the plaintiff's choice of venue is accorded special consideration such that "[u]nless the balance of the factors 'is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *CareFirst, Inc. v. Taylor*, 235 F. Supp. 3d 724, 733 (D. Md. 2017) (quoting *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984)). This Court retains "broad discretion" when deciding the propriety of transfer, *Volkswagen*, 545 F.3d at 312, undertaking "an individualized, case-by-case consideration of convenience and fairness." *United States ex rel. Salomon v. Wolff*, 268 F. Supp. 3d 770, 774 (D. Md. 2017) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

### III. ANALYSIS

The Court first addresses whether this action could have properly been brought in the Eastern District of Virginia. *See* 28 U.S.C. § 1391(b). Venue is proper, among other places, in the "judicial district in which a substantial part of the events . . . giving rise to the claim occurred." *Id.* Because both parties agree that most of the events leading to this action—namely the numerous instances of alleged sexual harassment and the eventual sexual assault—occurred

in Herndon, Doe could have elected to bring suit in the Eastern District of Virginia. Accordingly, the Court turns to the factors relevant to whether the action should be transferred there.

### A. Plaintiff's Choice of Venue

A plaintiff is generally regarded as the master of her Complaint. As a result, her choice of venue must be accorded substantial deference. *See Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002). The degree of deference, however, "is significantly lessened when none of the conduct complained of occurred in the forum selected by the plaintiff . . ." *Id.* To be sure, the events did take place in the transferee district. *Compare* ECF No. 6 at 5 *with* ECF No. 10 at 2. But Doe is a Maryland resident, which itself may be a basis to defer to her choice of venue. *See* 28 U.S.C. §1391(b)(1); *see also Maiden Biosciences, Inc. v. MPM Med., Inc.*, No. RDB-17-3029, 2018 WL 2416071, at *4 (D. Md. May 29, 2018); *Topiwala v. Wessell*, No. WDQ-11-0543, 2012 WL 122411, at *7 (D. Md. Jan. 12, 2012). Likewise, Power Solutions calls Maryland home. Although a close call, this factor tips slightly in Doe's favor when considering that a plaintiff's choice of venue must not be easily disturbed. *See Ramani v. Genesis Healthcare, Inc.*, No. GJH-19-3342, 2021 WL 211302, at *2 (D. Md. Jan. 21, 2021).

### B. Convenience of Witnesses

The convenience of witnesses is "perhaps the most important factor" in deciding the propriety of transfer. *Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 (D. Md. 2000). To prevail on this factor, the movant must offer particularized evidence that supports transfer for witness convenience or other like considerations. *MedServ Int'l, Inc. v. Rooney*, No. AW-05-3173, 2006 WL 8457082, at *2 (D. Md. Feb. 7, 2006). Mere conclusory allegations of hardship are not enough. The movant must specifically show how the plaintiff's

choice of venue visits specific hardship. *Int'l Masonry Training & Educ. Found. v. Hawaii Masons' Training Fund*, No. 3320-PX, 2019 WL 1492684, at *1 (D. Md. Apr. 3, 2019). Put differently, "[t]ransfer of venue is inappropriate where it will merely shift the balance of convenience from plaintiff to defendant." *Maiden Biosciences, Inc.*, 2018 WL 2416071, at *5 (internal quotation marks omitted) (quoting *Bd. of Trs. v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1258 (E.D. Va. 1988)).

Defendant offers that McPherson, a potential fact witness, is "not a Maryland resident and does not presently work in Maryland." ECF No. 6 at 6. Defendant also highlights that Doe's psychiatry expert, Dr. Thomas N. Wise, practices in McLean, Virginia. *Id.* Doe also has filed a formal charge of discrimination with the Fairfax County Office of Human Rights and Equity Programs, and it is possible that any subsequent criminal investigation was handled by the Fairfax County Police Department. *Id.* Lastly, Defendant suggests that some unidentified fact witnesses work or reside in Virginia. *Id.* Doe counters that the mere presence of witnesses in Northern Virginia does not render this forum comparatively more burdensome. *See* ECF No. 10 at 4. Additionally, Doe points out that Defendant ignores many other liability and damages witnesses who reside or work in Maryland, to include Doe's alleged assailant and each of her treating medical providers. *See id.*

In all, the Court is not persuaded that venue in this District would be unduly burdensome to any of the identified witnesses. Most obviously, the Eastern District of Virginia's Alexandria courthouse is about a thirty-minute drive from the District of Maryland's Greenbelt courthouse, to which this case has been assigned. Defendant has simply failed to show why this minor additional travel time to this forum should trump Plaintiff's choice. Because Defendant has not met its burden to demonstrate witness inconvenience, this factor favors Doe.

### C. Convenience of the Parties

As to the convenience of the parties to this action, both acknowledge that they are "at home" in Maryland. *Compare* ECF No. 6 at 5 *with* ECF No. 10 at 1. Further, it appears that each party is represented by attorneys based in Washington, D.C., which is essentially equidistant from this District and the transferee district. Accordingly, this factor also cuts against transfer. *See Wolf v. P.J.K. Food Serv., LLC*, No. 21-01443-PX, 2021 WL 4991724, at *3 (D. Md. Oct. 27, 2021) ("[I]t makes little sense that a courthouse in the Eastern District of Virginia—located about 30 minutes by car from this District—will be any more convenient than litigating the case here.").

### D. Interests of Justice

Finally, the Court turns to the somewhat amorphous "interest of justice" factor, which encompasses all relevant considerations apart from witness and party convenience. *See Topiwala v. Wessell*, No. WDQ-11-0543, 2012 WL 122411, at *8 (D. Md. Jan. 12, 2012). This includes whether the plaintiff's chosen venue has sufficient familiarity with the underlying substantive law and whether any local interests would favor resolution of the issues in the place they occurred. *See id.*; *see also Maiden Biosciences, Inc.*, 2018 WL 2416071, at *5.

At the end of the day, the interests-of-justice factor is a wash. The gravamen of Doe's Complaint sounds in federal antidiscrimination law, on which either forum is well versed. As to the supplemental claims, Doe invokes both Maryland and Virginia common law, placing either court in the position of interpreting the state law of the other. As for the Virginia state law claims, the Court notes that they do not involve issues so "complex or ambiguous" that it counsels in favor of transfer. *See Richardson v. Nationwide Mortg. Corp.*, No. M-84-240, 1985 WL 9133, at *9 (D. Md. Oct. 4, 1985). This factor, in short, neither helps nor hurts Defendant's

7

request.

## IV. CONCLUSION

On balance, three of the four factors weigh in favor of Doe's selected venue. The Court will honor Doe's choice of forum. The motion to transfer venue is, therefore, DENIED. A separate Order follows.

November 17, 2021                                         /s/
Date                                                         Paula Xinis
                                                                              United States District Judge